beer, brewed within the District of Columbia, in quantities not less than one barrel, or thirty-one and an half gallons, $50; and for a license to sell or barter porter, ale, and beer, not brewed in the District of Columbia, in addition to any other license obtained from this corporation, $25. For a license to keep a livery-stable, $20. For a license to trade or traffic in slaves for profit, whether as agent or otherwise, $400. And every person who shall sell or barter at retail, trade, traffic, or keep, as aforesaid, without first obtaining a license therefor, shall forfeit and pay for each and every offence, a sum of not less than $20, nor more than $50, to be recovered and disposed of as other fines are."

Mr. Hoban, for defendant, (the appellee,) contended that the corporation had no power, under their charter, to tax anything but property; not mere trades or professions, which could not be assessed, and the taxes of which would be subject to no limit. That such taxes are derogatory to common right, and inconsistent with the general law of the land. That the by-law does not profess to be passed under the power to license retailers, for it affects wholesale dealers as well as retailers; and a man who should sell wood or coal by wholesale would be as much liable to the penalty as one who should sell firewood by the foot and coal by the peck. The keeper of a livery-stable cannot, in any sense of the word, be called a retailer; so the trafficker in slaves, who collects them individually or in small numbers, and sells them by cargo, cannot be called a retailer, and yet he would be liable to the penalty of the by-law. The same observation applies to the licenses granted under the by-law of the 28th of October, 1831, to confectioners, and the venders of hats, boots, and shoes, hardware, perfumery, medicines, jewelry, and watches, dry goods, and china, glass, and crockery ware, the penalty is not for retailing, but for selling, whether by wholesale or retail. He also contended that the word "retailers" in the charter applied only to retailers of spirituous liquors.

Mr. Bradley, contra, contended that the corporation derived their power to tax the keeper of a wood-yard from their power "to provide for the inspection of lumber and other building materials, and for the appointment of inspectors," and "to provide for the appointment of appraisers and measurers of builders' work and materials, and also of wood, coal, grain, and lumber," contained in the 7th and 8th sections of the charter of 1820; for the corporation cannot exercise their power of inspection and control over these matters without the power of granting licenses. He also contended that the keeper of a woodyard is a "retailer," and, as such, liable to be taxed and regulated.

THE COURT, being of that opinion, reversed the judgment of the justice of the peace, and rendered judgment for the lowest penalty, viz., $20.

CRANCH, Chief Judge, dissented, and repeated the substance of his opinion before given in the cases of Carey v. Washington [Case No. 2,404], in November, 1836, and of Washington v. Barber [Id. 17,224], in August, 1837.

_____

WASHINGTON (CLARK v.). See Case No. 2,839.

_____

## Case No. 17,226.
### WASHINGTON v. COOLY.
[4 Cranch, C. C. 103.] [1]

Circuit Court, District of Columbia. Dec. Term, 1830.

##### SETTING UP FARO-TABLE—SUFFICIENCY OF WARRANT.

A warrant upon the by-law of the city of Washington, of January 12, 1830 (section 1), for setting up a faro-table, must state it to be "for the purpose of gaming for money."

Appeal from the judgment of a justice of the peace for a fine of $50 for setting up "a table called faro, upon which cards were played."

Mr. Coxe, for defendant [Azariah Cooly], objected that the warrant did not charge any offence under the by-law, because the purpose or intent of setting up the table is not stated therein. The words of the by-law are, that "no E. O. A. B. C., L. S. D., faro, rolly-bolly, shuffle-board, equality-table, or other device, to be used with cards, balls, dice, coin, or money, or any other game of hazard, (except the game of billiards, upon licensed billiard-tables,) for the purpose of playing or gaming for money, or any thing in lieu thereof, shall be set up, kept, or exhibited in any part of this city, under the penalty of fifty dollars for every day," &c.

Mr. Ashton, contra. The justice of the peace is to proceed according to the right and equity of the matter; and the court is not to regard mere matter of form. The intent may be inferred from the use actually made of it. If the intent had been alleged in the warrant, and he could disprove that intent, he would be acquitted. The words, "for the purpose of gaming for money," are only applicable to the words "or any other device," and not to the word "faro." the setting up of which is prohibited, although not set up with any such intent.

THE COURT, upon motion (THRUSTON, Circuit Judge, absent), quashed the warrant, because it did not set forth the intent which constitutes an essential part of the offence, under the by-law.

_____

[1] [Reported by Hon. William Cranch, Chief Judge.]